Richard DeCLARA, Plaintiff,

v.

METROPOLITAN TRANSPORTATION AUTHORITY, Metro–North Commuter Railroad Company, Peter E. Stangl, individually and as President and General Manager of Metro–North Commuter Railroad Company, Thomas A. Constantine, individually and as Superintendent of Police, New York State, Raymond Burney, Assistant Director of Labor Relations, Metro–North Commuter Railroad Company, The State of New York, Defendants.

No. 89 Civ. 7316 (RWS).

United States District Court, S.D. New York.

Aug. 29, 1990.

Sam Polur, New York City, for plaintiff.

Metro North Commuter R. Co., Robert Bergen, General Counsel (Denise R. Balan, of counsel), New York City, for defendants Metropolitan Transp. Authority, Metro–North Commuter R.R., Peter Stangl and Raymond Burney.

Robert Abrams, Atty. Gen., State of N.Y. (Ellen J. Fried, Mary E. Oleske, Asst. Attys. Gen., of counsel), New York City, for defendants The State of N.Y. and Thomas A. Constantine.

## OPINION

SWEET, District Judge.

Defendants Metropolitan Transportation Authority ("MTA"), Metro–North Commuter Railroad Company ("MetroNorth"), Peter Stangl ("Stangl"), Thomas Constantine ("Constantine"), Raymond Burney ("Burney"), and New York State (the "State") move for dismissal of plaintiff Richard DeClara's ("DeClara") complaint, under either Rule 12(b)(1) or 12(b)(6), Fed.R.Civ.P. For the reasons set forth below, the motion is granted.

*Parties*

DeClara is a former MetroNorth police officer, employed by MetroNorth from 1967 to 1989.

Defendant MTA is the administrative agency dealing with mass transit within New York City.

Defendant MetroNorth is a commuter railroad that runs between Westchester County and New York City.

Defendant Constantine is sued individually and in his capacity as Superintendent of Police of the State.

Defendant Stangl is sued individually and as General Manager of MetroNorth.

Defendant Burney is sued as the Assistant Director of Labor Relations for Metro-North.

*Facts*

In March or April 1983, while Metro-North workers were on strike, DeClara and other MetroNorth officers were assigned to patrol the Grand Central Station Terminal ("Grand Central"). DeClara and those officers brought a VHS video camera with them on patrol, where they shot the tape entitled "Buba on Patrol." The tape depicts the officers, including DeClara, in various situations. In particular, the tape shows DeClara patrolling Grand Central completely nude, except for his hat, necktie, gun holster, socks, and shoes. Elsewhere, DeClara is seen interviewing two homeless women,[1] and a black man.[2]

According to DeClara, Captain Dean Evans learned of the tape in 1985. However, the tape went undiscovered by the Metro-North administration until August 2, 1988, when Stangl learned of the tape. Stangl wrote to Constantine to inform him of the tape, and he also enclosed a copy so Constantine could view it before taking action. Stangl referred to the officers' actions as "unprofessional and unacceptable," and stated that their conduct demonstrated "a lack of good moral character and fitness to hold a police commission."

On August 4, 1988, Constantine took DeClara and the other officers out of service

---

1. The following is an excerpt from the video recording of the interview with one of the homeless women:

    *DeClara:* Who's that? Your husband, or what?

    *Woman:* No. I'm not married.

    *DeClara:* You're not married? A good-looking broad like you?

2. The following is an excerpt of DeClara's interview with the black man in Grand Central:

    *DeClara:* When did you notice you turned black?

    *Man:* In the summer.

    *DeClara:* Summer time? Last summer? Did that have an adverse effect on your relations with your family?

    *Man:* Uh-uh.

    *DeClara:* Did you find yourself eating a lot of watermelon, tap dancing, and shining shoes?

pending disciplinary proceedings. On August 10, 1988, Constantine revoked DeClara's commission as a MetroNorth officer, and MetroNorth Police Chief Wilson informed DeClara of the decision to terminate his employment on August 17, 1988.[3]

*Prior Proceedings*

On August 20, 1988, the Railroad Police Benevolent Association ("DeClara's union") appealed the matter to the Labor Relations Department of MetroNorth. An appeal hearing was held on September 1, 1988 (fifteen days after notice of termination), and Burney denied the appeal on September 22. On September 28, DeClara's union requested arbitration of the matter before the Special Board of Adjustment No. 980 ("the Adjustment Board"). On January 11, 1989, the Adjustment Board upheld DeClara's discharge.

DeClara then instituted suit in this court on November 2, 1989, and defendants submitted a motion to dismiss on December 15, 1989. Oral arguments were scheduled for June 29, 1990,[4] and the papers were considered fully submitted on that date.

*Motion to Dismiss*

The State, MTA, MetroNorth, Constantine, Stangl, and Burney have moved under either Rule 12(b)(1) or 12(b)(6), Fed.R. Civ.P., to dismiss DeClara's complaint[5] for lack of subject matter jurisdiction and failure to state a cause of action under the Fifth or Fourteenth Amendments, or § 1983.

A. Subject Matter Jurisdiction

Generally, federal courts lack jurisdiction to review the findings of an Adjustment Board. *See Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972) (differing interpretations of collective bargaining agreements must be resolved through arbitration and not in federal courts); *Baylis v. Marriott Corp.*, 843 F.2d 658, 662 (2d Cir.1988) (arbitration proceedings are mandatory and provide the exclusive forum for interpretation of contracts under the Railway Labor Act; federal courts therefore lack jurisdiction to hear those claims); *Brotherhood of Teamsters v. Western Pacific Ry. Co.*, 809 F.2d 607, 610 (9th Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987) ("[w]hen a railway labor dispute involved the interpretation of a collective bargaining agreement, the Railway Labor Act requires

---

**3.** This letter states:

> Metro–North has been informed by the Office of the New York State Police Superintendent that your appointment as Railroad Policeman has been revoked effective August 10, 1988. A copy of the revocation notice is attached.
>
> As a result thereof, pursuant to Article 21, Section 2 of the Collective Bargaining Agreement between Metro–North and the Railroad Police Benevolent Association, you have forfeited your seniority and accordingly, your employment relationship with Metro–North Commuter Railroad is terminated.

**4.** DeClara's counsel failed to appear. In response to an oral motion for sanctions, counsels for defendants were each awarded $500 on July 23, 1990. After a submission of an affirmation in opposition dated July 30, 1990, the award was vacated on that date.

**5.** Initially, MTA, MetroNorth, Stangl, and Burney moved to dismiss on these grounds. On June 6, 1990, the State and Constantine filed a motion joining their co-defendants' Rule 12(b) motions, and moving for dismissal under both Rule 4(j) and the Eleventh Amendment.

DeClara has not opposed Constantine's and the State's assertion that they were served approximately 165 days after the case was filed. Under Rule 4(j), if service is made more than 120 days after filing, the case must be dismissed absent special circumstances not present here. Fed.R.Civ.P. 4(j). Consequently, the complaints against Constantine and the State are dismissed under Rule 4(j).

The complaints against the State and Constantine in his official and individual capacity are also dismissed under the Eleventh Amendment. New York State cannot be sued for monetary or injunctive relief unless it consents to suit, *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984), which it has not done here. Constantine, as an official of the State, likewise is immune from suits brought against him in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Finally, the complaint is devoid of allegations of Constantine's individual misconduct and sets forth no facts to overcome Constantine's qualified immunity from money damages. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

that it be submitted to arbitration; the federal courts do not have jurisdiction to resolve the dispute").

The Railway Labor Act ("RLA"), 45 U.S.C. § 153 First (q) provides a narrow standard for judicial review. *Myron v. Consolidated Rail Corp.*, 752 F.2d 50, 52 (2d Cir.1985). Under 45 U.S.C. § 153 First (q), a federal court may review an Arbitration Board holding only if there is: (1) failure of the Board to comply with the requirements of the Railway Labor Act; (2) failure of the Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption by a member of the division Adjustment Board. *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

DeClara invokes two exceptions to establish subject matter jurisdiction. First, De-Clara also maintains that the Board's decision not to address the question of Constantine's authority to terminate DeClara's employment amounts to a failure by the Board to "conform ... to matters within the scope of its jurisdiction" because the Board did not address Constantine's authority and they are required to address every issue. 45 U.S.C. § 153 First (q)(2). Because the Board found that DeClara's challenge to Constantine's authority "is beyond the ambit of contractual arbitral review," and that only a court of competent jurisdiction can decide that issue, DeClara asserts that the Board's decision is reviewable under 45 U.S.C. § 153 First (q)(2).

The Board is given the jurisdiction by the Railway Labor Act to interpret employment contracts and resolve disputes. 45 U.S.C. § 151 *et seq.* The Board, however, lacks the jurisdiction to determine the powers of Constantine, who revoked DeClara's commission, since Constantine (as superintendent) is not a party to the contract.[6] The Board's decision was not incomplete; the Board exercised only the jurisdiction given it under the Railway Labor Act. The Board properly refrained from addressing issues outside the interpretation of the Agreement. Consequently, the Board complied with the Railway Labor Act, and this court lacks jurisdiction under 45 U.S.C. § 153 First (q) to review the Board's affirmation of DeClara's termination.

Second, DeClara also alleges that the defendants fraudulently caused his commission to be revoked by depriving him of his rights under Article 16 of the Agreement.[7] DeClara maintains that under 45 U.S.C. § 153 First (q)(3) ("fraud or corruption by a member of the division Adjustment Board"), the alleged conspiracy confers subject matter jurisdiction and thus permits a review of the Board's findings. However, the language of 45 U.S.C. § 153 First (q)(3) allows judicial review of the Board's decision only when there is corruption or fraud by a *member of the Arbitration Board.* DeClara does not allege such corruption by a member of the Board here, only, by various defendants. The court therefore lacks jurisdiction to review the Board's decision under this exception.

Absent the establishment of one of these exceptions, this court lacks subject matter jurisdiction to review the Board's interpretation of DeClara's contract and whether the Board properly applied Article 21 rather than Article 16 to deprive him of his commission.

---

**6.** However, once Constantine did revoke De-Clara's commission, the Board held that Article 21(2) (dealing with officers unable to obtain/review a commission) applied to the case. This section provides that such officers are disqualified for service and must forfeit seniority. Pursuant to this part of the contract, DeClara's employment as an officer for Metro North was terminated.

**7.** Article 16(3)(d) states:
Trials on matters which do not involve officers being held out of service and which involve a single incident shall be scheduled to begin within thirty (30) calendar days from the date of first actual knowledge of such matters by a member of the Police Department with the rank of Captain or above. If not so scheduled, the charge shall become null and void.
Article 21(2) states in pertinent part:
Inability of an officer to obtain or renew the necessary policy commission shall automatically disqualify him for service and he shall forfeit his seniority under this Agreement ...

## B. Absent a Due Process Violation, The Remaining Claims[8] Fail

DeClara alleges that the defendants' failure to give him a full trial before terminating his employment amounts to a deprivation of due process in violation of the Fourteenth Amendment. The defendants maintain that DeClara was afforded all the process due him through the appeal hearing (September 1, 1988) and the Adjustment Board hearing (decision issued January 11, 1989), both held after DeClara received the termination letter.

The Supreme Court has rejected the notion that there must always be a hearing before the initial deprivation of property. *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court has further held that if adequate post-deprivation procedures exist, the Due Process Clause is not violated by failure to give a pre-deprivation hearing for intentional deprivations since such acts are random, unauthorized, making a predeprivation proceeding impracticable. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). Insofar as DeClara alleged fraud and misrepresentation by defendants in terminating the commission, he has alleged an intentional deprivation, and, therefore, a post-deprivation hearing would protect sufficiently his constitutional rights.

Moreover, where an employee has the right under a contract to seek arbitration of the dispute, his constitutional rights are protected by those procedures. *See Parrett v. City of Connersville*, 737 F.2d 690, 696 (7th Cir.1984) ("dispute resolution created by a collective bargaining agreement can satisfy due process requirements"); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir.1983) ("the right to proceed to arbi-

tration provided [the employee] with an adequate due process safeguard"); *Gendalia v. Gioffre*, 606 F.Supp. 363, 367 (S.D.N.Y.1985) ("the existence of sufficient post-deprivation remedies would provide the requisite due process. The ... employees do not dispute that the state remedies exist. [Therefore] the complaint fails to state a § 1983 claim").

DeClara does not deny the existence of the arbitration proceeding and he has already participated in an arbitrated hearing on his termination. Indeed, DeClara questions the Board's interpretation of the contract; he does not challenge the post-deprivation hearings as constitutionally insufficient. In light of established law in this field, the arbitration proceedings safeguarded DeClara's due process rights. The Board's unfavorable decision to DeClara does not turn the process into a constitutional violation. Absent a due process claim, DeClara has not alleged any loss of a federal right under § 1983, nor has he put forth a potential fourth exception to § 153 First (q).[9]

Finally, DeClara is not entitled to equitable relief.

For the foregoing reasons, defendant's motion is granted, and DeClara's complaint is dismissed in its entirety.

It is so ordered.

---

8. DeClara's Fifth Amendment claim is dismissed absent any allegations sufficient to support a cause of action against the federal government as set forth in *Myron v. Consolidated Rail Corp.*, 752 F.2d 50, 54 (2d Cir.1985).

9. *See e.g., Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 846 (9th Cir.1989); *Hayes v. Western Weighing & Inspection Bureau*, 838 F.2d 1434, 1436 (5th Cir.1988); *Steffens v. Brotherhood of Railway, Airline & Steamship Clerks*, 797 F.2d 442, 448 (7th Cir.1986) (all recognizing a denial of due process as a ground for reviewing a Board decision). *But see Henry v. Delta Airlines*, 759 F.2d 870, 873 (11th Cir.1988) (only exceptions for review of Board decision are the three stated in § 153 First (q)).