Dennis VERDON, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, Metropolitan Transit Authority–Metro North Commuter Rail Division, Defendants.

No. 93 Civ. 487 (GLG).

United States District Court, S.D. New York.

Aug. 12, 1993.

Law Offices of Carton & Rosoff, P.C., New Rochelle, NY by David M. Rosoff, for plaintiff.

Metro–North Commuter R. Co., Richard K. Bernard, General Counsel, New York City, by Rhonda J. Moll, for defendant Metro–North Commuter R. Co.

Morgan, Lewis & Bockius, New York City by Bradford W. Coupe, for defendant Consol. Rail Corp.

## OPINION

GOETTEL, District Judge.

This action involves an employment dispute between an individual plaintiff and two railroads. Plaintiff Dennis Verdon is a resident of the State of New York. Defendant Consolidated Rail Corporation ("Conrail") is a Pennsylvania corporation, created by Congress under the Regional Rail Reorganization Act of 1973 to be a "for-profit corporation" operating as an interstate "common carrier by railroad." 45 U.S.C. § 741(b). Defendant Metro–North Commuter Rail Division ("Metro–North") is a public-benefit corporation which is a wholly owned subsidiary of the Metropolitan Transit Authority ("MTA"), a Public Authority of the State of New York. N.Y.Pub.Auth.L. §§ 1260 et seq. (McKinney's 1982 & Supp.1992).

## I. FACTS

According to the complaint, plaintiff worked for Conrail as a trainman on one of its New York City commuter lines from June 11, 1976 until February 11, 1978, when he took a medical leave of absence to obtain drug treatment. At oral argument, defendant Conrail conceded that plaintiff began working for them as a trainman in 1976, but they claim no knowledge of how long he worked for them or by what action he came to leave their employ. The suggestion has been made by Conrail that he may have simply abandoned his position at Conrail, rather than taking a formal medical leave. Plaintiff claims he has been fully rehabilitated from his drug addiction and ready to return to work since August 29, 1986.

During plaintiff's absence, Conrail underwent substantial change. Conrail had been created in order to "reorganiz[e] ... [the] railroads in th[e] [northeast] region into an economically viable system capable of providing adequate and efficient rail service to the region." 45 U.S.C. § 701(b)(2). Unfortunately, by 1981 Congress found that Conrail had failed to become "[the] self-sustaining railroad system in the Northeast" it had envisioned. § 1132(1) of the Northeast Rail Service Act of 1981 ("NRSA"), 45 U.S.C. § 1101(1). Thus, to help bring about a self-sustaining railroad system, Congress enacted legislation which relieved Conrail of its responsibility to provide commuter rail service to the New York metropolitan area. 45 U.S.C. § 1102(2). This responsibility was transferred to "entities whose principal purpose [was] the provision of commuter service." Id. In this process, the Conrail commuter line plaintiff claims to have worked for

was transferred to Metro–North, effective January 1, 1983. 45 U.S.C. § 744(a).

As part of the transfer, Conrail, Metro–North, and the United Transportation Union ("the UTU")[1] were required to negotiate an agreement to implement the procedures Congress had legislatively mandated to protect the rights of Conrail employees in the transfer process. § 1145 of the NRSA, 45 U.S.C. §§ 588(a), (b), (c). Under the NRSA, if no agreement were reached by August 1, 1982, the matter would have to be submitted to a neutral referee for mediation; such mediation would be legally binding on all parties. § 1145 of the NRSA, 45 U.S.C. §§ 588(d). Since the parties did in fact fail to reach an agreement, a neutral referee was appointed, and that referee imposed an agreement binding on all parties ("the Implementing Agreement"). Pursuant to this agreement, Conrail train service employees who had been on disability or leave of absence at the time commuter service was transferred to Metro–North had the right "within five working days following their return to service with Conrail, [to] exercise seniority against [junior employees] of Metro–North." Implementing Agreement at § II.C. The agreement also set out the means by which disputes rising out of its provisions were to be resolved. It stated that all disputes which remained unresolved for over 60 days "may be submitted by any of the parties to an Adjustment Board for a final and binding decision thereon as provided for in Section 3, Second of the Railway Labor Act [ ("RLA" or "the Act"),

45 U.S.C. §§ 151, et seq.]." Implementing Agreement at § X.

Shortly after the Implementing Agreement was imposed, Metro–North and the UTU entered into a collective bargaining agreement ("the UTU Agreement") which incorporated some of the provisions of the Implementing Agreement, including provisions regarding the "flow through" rights of senior Conrail employees at Metro–North. Defendant Metro–North believed that plaintiff claimed rights in part under this collective bargaining agreement. Plaintiff, however, informs us that he is not claiming any rights under the UTU agreement.[2] Instead, he states, he asserts contractual rights solely under the Implementation Agreement and the Act upon which that Agreement is founded, the NRSA.[3]

Plaintiff claims that once he was ready to return to work, he tried to use the Implementation Agreement and the NRSA to obtain an assistant conductor's position at Metro–North—the approximate equivalent of a trainman position at Conrail—based on his Conrail seniority, but that his requests were denied. It is this failure to permit plaintiff to "flow through" Conrail to Metro–North as an assistant conductor which forms the basis of the present action.

According to the complaint, plaintiff's efforts to obtain this position were as follows: On August 29, 1986, plaintiff wrote to Conrail's Manager of Labor Relations, J.F. Glass, to reactivate his employment. Thereafter, Edward Farley, the Chairman of plain-

1. The parties inform us that the United Transportation Union served as a union for certain classes of employees of *both* Conrail and Metro–North at the time. Among them were employees who worked as trainmen at Conrail, and who worked as conductors and assistant conductors at Metro–North.

2. Metro–North's belief is understandable, since plaintiff almost certainly *could* assert rights under the UTU agreement. But plaintiff conceded at oral argument that he claims no right under the UTU Agreement in this action because, pursuant to Rule 24 of the UTU Agreement, the appropriate forum for vindication of his rights would be the adjustment board created by the agreement to settle disputes rising out of its provisions, as permitted under § 3 Second of the RLA, 45 U.S.C. § 153 Second. The board "ha[s]

jurisdiction over *all* final appeals in claims for compensation ... [and over] *any* dispute concerning the interpretation of th[e] agreement."

3. Plaintiff's complaint had presented an extremely sketchy claim under the Railway Labor Act ["RLA"] as well. But at oral argument he insisted that any reference to that Act in his papers was "a mistake" and that he claims no cause of action under the RLA. Since no party objects to our dropping the RLA claim, we shall consider it dropped. However, we note that plaintiff concedes that the reason he seeks to avoid a claim under the RLA mirrors the reason he sought to claim no rights under the UTU Agreement: because the appropriate forum for vindication of his rights would be an adjustment board created by the provisions of the RLA.

tiff's Conrail Union, provided Glass with documentation which plaintiff claims was sufficient to substantiate his employment. Mr. Farley is said to have followed up this action with a letter dated December 15, 1986, in which he "reiterated that [plaintiff] was on a medical leave of absence and asked that [plaintiff's] request for reinstatement be acted upon." Complaint at paragraph 19. Glass responded by letter dated December 19, 1986, stating that Conrail did not have sufficient record of his employment "to justify [his] restoration to Conrail [s]ervice," but that his decision "was subject to reconsideration on request" if plaintiff could provide "appropriate documentation." Complaint at paragraph 20. Then, by letter dated January 28, 1987, Mr. Glass went on to explain more specifically that Conrail had no record of plaintiff's previous employment or seniority on its most recent official seniority roster, a roster Conrail posts each year to indicate the work history of its employees as required by Conrail's agreement with the UTU. Without such a listing, they could not allow him to return to Conrail as a former employee.

Plaintiff claims that thereafter he communicated with Conrail, through his attorney, by telephone and letter "several times" in his efforts to obtain reinstatement. Complaint at paragraph 22. The point at which plaintiff finally made written application to Conrail and Metro–North to become an assistant conductor for Metro–North is indicated by the complaint, and was confirmed at oral argument by plaintiff's attorney to be April 1, 1992.[4] Plaintiff claims this request was "timely," but that his request was denied "on the ground that he had not served at Conrail." Complaint at paragraph 28.

Plaintiff now sues for violation of his rights under the Implementation Agreement and under § 1145 of the NRSA, 45 U.S.C. § 588; for violation of his constitutional rights under color of law under 42 U.S.C. § 1983; and for deprivation of his "vested property rights"[5] without due process of law in violation of the Fourteenth Amendment. He seeks declarations that he was employed as a trainman for Conrail from June 11, 1976 to February 10, 1978 and that he is entitled to his "seniority and the attendant transfer rights under the Implementation Agreement." Complaint at paragraph II. Plaintiff also seeks an Order from this court requiring Metro–North to appoint him to the position of assistant conductor; ordering them to give him full backpay, seniority, and benefits including "all promotions and raises he would have received had he been reinstated to Conrail and transferred to Metro Northon [sic] August 29, 1986,"[6] the date on which he wrote to Conrail to inform them that he was ready to return to work; and holding it jointly and severally liable with Conrail for "all lost pay, benefits and seniority suffered by plaintiff,"[7] along with reasonable attorney's fees and costs incurred in prosecuting this action.

In the motions presently before us, defendant Conrail moves to dismiss plaintiff's NRSA and Implementation Agreement claims for want of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1); to dismiss plaintiff's § 1983 and Due Process claims for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6); or to alternatively dismiss plaintiff's § 1983 claim as time-barred under the applicable statute of limitations. Defendant Metro–North moves to dismiss all claims for

---

**4.** Plaintiff apparently had his priest write to the President of Metro–North about the difficulty he was having in the spring of 1987, on the hope that Metro–North might have record of his past employment with Conrail, since they took over Conrail's commuter service on the line plaintiff previously worked for. This, then, would be the first contact plaintiff had with Metro–North regarding his employment. After looking into the matter, Metro–North responded by letter that they had no record of his past employment with Conrail, and that without verification of his past employment from Conrail, they were powerless under the Implementation Agreement to help

him. Plaintiff does *not* allude to these facts in his complaint, but he conceded the point at oral argument. However, he argues that the only relevant date was the date of his first *formal* request to be allowed to "flow through" to Metro–North. This request was not made until 1992.

**5.** Complaint at paragraph 46.

**6.** Complaint at paragraph IV.

**7.** Complaint at paragraph V.

want of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1); to dismiss plaintiff's § 1983 claim for failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6) because the claim is time-barred under the applicable statute of limitations; and for sanctions against plaintiff under Rule 11 of the Federal Rules of Civil Procedure. Not surprisingly, plaintiff opposes all of the above motions. In addition, plaintiff requests leave from this court to amend his complaint to include claims under (1) the Americans with Disabilities Act, as codified at 42 U.S.C. §§ 12101 *et seq.;* (2) § 296 of the New York Human Rights Law; and (3) § 213 paragraph 8 of the New York Civil Practice Law and Rules ("CPLR").[8] We address the issues raised by the motions to dismiss for want of subject matter jurisdiction first. To the extent that defendants' motions overlap, they will be addressed simultaneously.

## II. DISCUSSION

### A. Dismissal for Lack of Subject Matter Jurisdiction

Both defendants maintain that this court lacks subject matter jurisdiction over at least some of plaintiff's claims.[9] They reason that our hearing of these claims is preempted by the administrative procedures provided for by Congress under the RLA. Defendants argue that these procedures serve as the exclusive "pre-appeal" remedy for plaintiff's present claims since, they contend, plaintiff's claims constitute a "minor" dispute. We agree that the arbitration procedures available under the RLA do preempt our hearing of this case, resulting in a lack of subject matter jurisdiction, but only as to some of plaintiff's asserted claims.

The RLA was enacted by Congress "to promote stability in labor-management relations by providing a framework for resolving labor disputes in the railroad industry." *Milam v. Herrlin,* 819 F.Supp. 295, 300–01 (S.D.N.Y.1993) (quoting *Melanson v. United Air Lines, Inc.* 931 F.2d 558, 561 (9th Cir. 1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991). The Act "establishes an arbitration system that preempts other avenues of securing relief ... [for] employee[ ] grievance[s]" rising out of collective bargaining agreements. *Id.* at 301. Within this arbitration system, the Act divides claims rising out of collective bargaining agreements into two categories: "major" and "minor" disputes. *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987).

Minor disputes "[are] subject to *compulsory* and *binding* arbitration before the National Railroad Adjustment Board [ ("the NRAB") ] ... or before an adjustment board [ ("another board") ] established by the employer and the unions representing the employees." *Consolidated Rail Corp. v. Railway Labor Executives,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989) (citing §§ 3 and 3 Second of the RLA, 45 U.S.C. §§ 153 and 153 Second). *See, e.g., DeClara v. Metropolitan Transportation Authority,* 748 F.Supp. 92 (S.D.N.Y.1990); *Baylis v. Marriott Corp.,* 843 F.2d 658 (2d Cir. 1988); *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). One of the terms of this Implementation Agreement created an adjustment board to hear disputes based in the Agreement's provisions, as permitted by Congress under § 3 Second of the RLA, 45 U.S.C. § 153 Second.

The Supreme Court examined the distinction between major and minor disputes, and articulated a standard for distinguishing between them in *Consolidated Rail Corp. v. Railway Labor Executives, supra.* Major disputes, the Court explained, involve at-

---

8. In passing, we note that plaintiff has not requested this leave to amend by filing a formal notice of motion, though he appears to allude to such a filing by his memorandum of law, entitled in part "plaintiff's memorandum of law ... in support of plaintiff's motion to amend." Only through this memorandum of law has he requested leave to amend his complaint.

9. Defendant Conrail maintains that we lack subject matter jurisdiction over the NRSA and Implementation Agreement claims; defendant Metro–North argues that we lack subject matter jurisdiction over *all* claims, including plaintiff's NRSA, Implementation Agreement, § 1983 and 14th Amendment Due Process claims.

tempts to change the rights of employees "as a class," *Id.*, 491 U.S. at 302, 109 S.Ct. at 2480 (quoting § 2 Seventh of the RLA, 45 U.S.C. § 152 Seventh), by seeking either to secure a new collective bargaining agreement or to change the terms of an existing one. *Id.* (citing *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). Minor disputes, by contrast:

> relate[ ] either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or [of] an asserted one, independent of the [provisions] covered by the collective bargaining agreement.... In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Id.*, 491 U.S. at 303, 109 S.Ct. at 2480 (quoting *Elgin, supra*, 325 U.S. at 723, 65 S.Ct. at 1290).

■■■ Despite plaintiff's protests to the contrary, it is obvious from these comments that plaintiff's case falls within the category of a minor dispute, not a major one and certainly not one, as plaintiff would have us believe, that successfully defies characterization under both categories so as to avoid the ambit of the board's review entirely.[10] His argument is essentially that he is entitled to exercise the same "flow through" rights as other senior Conrail employees under the Implementation Agreement and the NRSA. Hence, to borrow the Court's phrasing, his is an employee grievance over an "omitted case," "founded upon" either an "incident of the employment relation," or upon an incident of an "asserted" employment relation, making a claim based on "rights [already] accrued." *Consolidated Rail, supra*, 491 U.S. at 303, 109 S.Ct. at 2480. Thus, since plaintiff's claims constitute a minor dispute, the Implementation Agreement and the NRSA themselves preempt our hearing of

plaintiff's claims under them. We therefore decline to hear plaintiff's Implementation Agreement and NRSA claims because we lack subject matter jurisdiction over them.

■■■ Turning to plaintiff's remaining claims, we point out as an initial matter that these claims, brought under § 1983 and the Fourteenth Amendment's Due Process Clause, are actually plead in the complaint as a single claim which simply cites two separate sources of law. The claim is that the defendants were "public employers" who "by their actions deprived plaintiff of his vested property rights under the implementing agreement without due process of law." Complaint at paragraph 46. Under this circumstance, plaintiff's Fourteenth Amendment claim is at best duplicitous, since Congress enacted § 1983 to serve as the means by which claims like plaintiff's can be brought under the Due Process Clause of the Fourteenth Amendment *in place of* asserting the claim more generally under the Fourteenth Amendment. In support of this point, courts have held that where a party brings a Fourteenth Amendment claim under § 1983, presentation of that *exact* claim by "a direct action [under the Fourteenth Amendment] is obviated." *Lombard v. Bd. of Ed.*, 784 F.Supp. 1029, 1035 (E.D.N.Y.1992). Thus, we dismiss plaintiff's Fourteenth Amendment Due Process Claim as duplicative, and therefore frivolous, and address ourselves solely to his § 1983 Due Process claim in the remainder of this decision.

We turn now to the issue of whether or not plaintiff's § 1983 claim is preempted by the procedures Congress provided under the RLA, since it hinges on what under the RLA would be a minor dispute. The Second Circuit has held that a court's direct review of a § 1983 claim is *not* preempted by the RLA because Congress "in enacting § 1983 ... aimed to create an independent statutory scheme [from that of the RLA] for redressing constitutional wrongs to aggrieved indi-

---

10. Because the parties felt it appropriate to argue the point, we note that plaintiff's claims also do not, and could not, present some form of "hybrid" dispute—one which fits somewhere between a major and a minor dispute. The Supreme Court has unequivocally refused to recognize "hybrid" disputes as a new category and has

condemned attempts to characterize claims by that designation. *Consolidated Rail, supra*, 491 U.S. at 307–10, 109 S.Ct. at 2482–84. All claims which fall within the range of major to minor disputes shall be recognized by the courts as fitting either one or the other of these two exclusive designations.

viduals by providing a federal cause of action." *Coppinger v. Metro–North Commuter R.R.*, 861 F.2d 33, 37 (2d Cir.1988). Since plaintiff's § 1983 claim is thus not preempted, it cannot be dismissed on this basis for lack of subject matter jurisdiction.

### B. Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted

For purposes of addressing the defendants' motions to dismiss brought under 12(b)(6), all allegations in plaintiff's complaint must be taken as true, and must be viewed in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Under these circumstances, plaintiff's complaint will only be dismissed if it appears beyond reasonable doubt that his claims allege no set of facts which would entitle him to relief. *Solomon v. R.E.K. Dress*, 670 F.Supp. 96, 98 (S.D.N.Y. 1987).

#### 1. Plaintiff has Failed to Establish All Elements of His § 1983 Claims

To say that we have subject matter jurisdiction over plaintiff's § 1983 claim is not to say that it alleges grounds sufficient to state a claim upon which relief can be granted. For plaintiff's § 1983 claims to survive defendants' motions to dismiss under Fed. R.Civ.P. 12(b)(6), plaintiff must, *inter alia,* allege *all* elements required to establish his § 1983 claim. These are:

(1) Actions of the defendants

(2) Performed under color of state law

(3) Which deprived plaintiff of rights secured under the Constitution or laws of the United States

(4) Without due process of law

*Katz v. Klehammer,* 902 F.2d 204, 206 (2d Cir.1990).

In his complaint, plaintiff has properly alleged action by the defendants—their failure to allow him to "flow through" to the Metro–North position he desired as a senior Conrail employee. Additionally, he has presented at least a colorable claim that the failure to allow him to "flow through" constituted a denial of a property right. *See generally DeClara, supra,* (noting that an employee's contractual right to employment under a collective bargaining agreement constituted a property right under the Fourteenth Amendment). Also, he is correct in asserting defendant Metro–North to be a public employer, and therefore one whose conduct would constitute state action for purposes of a § 1983 suit. However, plaintiff has failed to establish some of the remaining elements of his § 1983 claims against defendants Conrail and Metro–North, as required, in order to maintain these claims.

Section 1983 claims can only be brought against government actors or against private parties who acted as joint participants in government enterprises designed to deprive private citizens of their constitutional rights. *Myron v. Consolidated Rail Corp.,* 752 F.2d 50, 54 (2d Cir.1985). In support of his § 1983 claim against Defendant Conrail, plaintiff states in his complaint that Conrail is a public employer. Plaintiff is clearly incorrect. In recent years, many courts have addressed the issue of whether or not Conrail can be considered a public entity, and all have held Conrail to be a "private corporation … legally distinct from the government." *Consolidated Rail Corp. v. Metro–North Commuter R. Co.,* 638 F.Supp. 350, 355 (Sp.Ct.R.R.R.A.1986). *See also Regional Rail Reorganization Act Cases,* 419 U.S. 102, 152, 95 S.Ct. 335, 363, 42 L.Ed.2d 320 (1974) (Conrail is "a private, not a government enterprise"). Nonetheless, in his memorandum of law opposing the present motions to dismiss, he raises alternative grounds for asserting a claim of "state action" against Conrail which we find sufficiently colorable to accept for purposes of the present motion. Specifically, he states that Conrail acted in concert with Metro–North— which is a government actor—to deprive plaintiff of his rights. Since Metro–North's defense to the present action consists in arguing that without Conrail's acknowledgement of plaintiff's past service, they cannot help plaintiff "flow through," it seems possible that Metro–North, as the government, could have "so far insinuated itself into a position of interdependence with Conrail that it was a joint participant in the enterprise," here, of depriving plaintiff of his seniority

rights. *Myron, supra* at 54 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357–58, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) except that the *Myron* court inserted the word "Conrail" into the quote).

 Nonetheless, plaintiff's § 1983 claims fail against both Conrail and Metro–North for the following reasons. Plaintiff has claimed that the defendants' actions in failing to allow him to "flow through" to Metro–North from Conrail deprived him of his rights without due process of law. Plaintiff is incorrect, since the procedures which were available to him to resolve his dispute satisfied due process of law. This decision was reached by the courts in *DeClara, supra,* and we agree with their judgment.

In *DeClara* the plaintiff's § 1983 claim consisted in a direct challenge to the procedures by which minor disputes are resolved under the RLA. *DeClara, supra* at 96. As previously stated, Congress, under the RLA, intended minor labor disputes to be resolved through arbitration procedures culminating in a hearing before an adjustment board, if necessary. The *DeClara* plaintiff had claimed a right to a full trial before termination of his employment—a right not provided for by the procedures available under the RLA. He argued that his failure to receive such a pre-termination trial deprived him of his property rights without due process of law. *Id.* The court found that the post-deprivation dispute-resolution mechanisms Congress had provided for under the RLA properly satisfied due process of law. Since the dispute-resolution mechanisms satisfied due process, the court found that the plaintiff's § 1983 claim failed to allege that any federal right had been violated. The court therefore granted the defendant's motion to dismiss the claim under 12(b)(6). *Id.*

 In the instant case, plaintiff had the right to bring his complaint before his superiors in the railroads and the union and to, after 60 days, bring the matter before the adjustment board for final disposition of his claims. This is precisely the set of procedures which were available to the *DeClara* plaintiff. In accord with the *DeClara* court, we hold that these dispute-resolution mechanisms imposed upon plaintiff's grievance

properly satisfy due process of law. Thus, the only lapse in due process plaintiff can properly claim is that caused by his own failure to exercise his right to take advantage of these dispute-resolution procedures, and a claim for denial of due process at one's own hands is not actionable. Since plaintiff has therefore failed to establish a necessary element of his § 1983 claims against defendants Metro–North and Conrail—the element that they denied him due process—he has failed to state a claim upon which relief could be granted against them. We therefore grant both defendant Metro–North and defendant Conrail's motions to dismiss plaintiff's § 1983 claims against them under Rule 12(b)(6).

### 2. Plaintiff's § 1983 Claims Are Time-Barred

Even if plaintiff's § 1983 claims against Metro–North and Conrail did not require dismissal under Rule 12(b)(6) on the above grounds, they would still require dismissal under 12(b)(6), for failing to state a claim upon which relief can be granted, because they are time-barred. 42 U.S.C. § 1983 does not give a specific statute of limitations. The Supreme Court has therefore directed courts to use the applicable state's statute of limitations for personal injury actions for § 1983 claims. *Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985).

 In the instant case, Metro–North would clearly be a New York "state actor" for purposes of a § 1983 action. Thus a three-year statute of limitations would apply to plaintiff's § 1983 claim against Metro–North, *see, e.g., Malley v. Fernandez,* 1992 WL 204359 (1992) *and Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (each explaining that New York's three year statute of limitations applies to § 1983 claims against New York "state actors"). *If* Conrail were deemed a state actor, it would be either a Pennsylvania state actor, since that is the state in which it is incorporated and has its main office, or a New York state actor, since that is the location of the division of Conrail that plaintiff had worked for. Pennsylvania's personal injury law

would apply a two year statute of limitations to § 1983 claims. *See, e.g., Goussis v. Kimball,* 813 F.Supp. 352 (E.D.Pa.1993) (explaining that Pennsylvania's two year statute of limitations applies to § 1983 claims against Pennsylvania "state actors"). Since New York's is the longer statute of limitations, to give plaintiff all possible lee-way we will presume that he had three years to assert *both* § 1983 claims. The question then becomes when did his cause of action accrue, thus indicating the point at which the three year statute of limitations would begin to run.

 Determination of when an action accrues under § 1983 is based on federal law. *Babigian v. Assoc. of the Bar of the City of New York,* 744 F.Supp. 47, 50 (S.D.N.Y.1990). Federal law states that a cause of action accrues when "the plaintiff knows or has reason to know of the injury that is the basis of his action." *Id.* (quoting *Pauk v. Bd. of Trustees,* 654 F.2d 856, 859 (2d Cir.1981)). By plaintiff's own characterization in his complaint, his claimed injuries are (1) defendants' refusal to acknowledge plaintiff's purported prior service, Complaint at paragraphs 32 and 47, and (2) their resulting refusal to allow him to "flow through" to an assistant conductor position at Metro–North, Complaint at paragraph 38. Plaintiff claims that it was not until 1991, when he was informed that no record of his employment beyond a starting date could be found in Conrail's warehouse files, that his cause of action accrued. Hence, it is his position that it was not until 1991 that he knew of the above injuries. We find this position untenable.

To briefly restate the events underpinning determination of when plaintiff's cause of action accrued, again based solely on the facts plaintiff himself has alleged in his complaint, plaintiff applied to be reinstated as a Conrail employee on August 29, 1986. He then sent supportive documentation of his past employment with Conrail in the fall of 1986. Conrail responded on December 19, 1986, by notifying him in writing that they did not have sufficient record of his employment "to justify [his] restoration to Conrail

[s]ervice." Complaint at paragraph 20. Then, by letter dated January 28, 1987, Conrail informed plaintiff that it had no record of plaintiff's previous employment or seniority on its most recent official seniority roster and that without such a listing, they could not allow him to return to Conrail as a former employee. Plaintiff claims that thereafter he communicated with Conrail, through his attorney, by telephone and letter "several times" in his efforts to obtain reinstatement. Complaint at paragraph 22.

 Based on these allegations, it is clear that plaintiff knew or had reason to know of his injuries—that his past service had not been acknowledged and that without same he would not be allowed to "flow through" to Metro–North—by the end of January 1987, at the latest. The law does not require knowledge of every particular supporting one's cause of action before one can be held to have knowledge of the injury underlying a complaint. That he did not learn, in an absolute sense, that Conrail had *no* records concerning his post-commencement-date employment until 1991 does not mean that he did not have sufficient knowledge of his injury prior to that date to act upon it. He knew in December 1986 that Conrail did not have sufficient record of his employment "to justify [his] restoration to Conrail [s]ervice." Complaint at paragraph 20. Then, in January 1987 he was informed that *despite* the supporting documentation he had supplied Conrail, Conrail still found there to be insufficient documentation to reinstate plaintiff. At that point, plaintiff had ample knowledge of his injury, and good cause to institute proceedings before an adjustment board, as provided for under the Implementation Agreement and the NRSA, to vindicate his alleged rights. Thus, plaintiff's own complaint belies his attempt to portray his date-of-knowledge of his injury as 1991. Plaintiff filed the present action on January 26, 1993. Thus, since he waited almost six years to the day from the date on which his cause of action accrued before bringing the present action, his § 1983 claims are clearly time-barred.[11]

11. One could argue that his cause of action against Metro–North did not accrue until mid 1987, when he learned from Metro–North that they, too, had no record of his prior service with

▌ To avoid this time-bar, plaintiff has argued that Conrail and Metro–North engaged in fraudulent conduct, and that their fraud tolled the statute of limitations on his § 1983 claim. Fraudulent or deceptive acts on the part of defendants will toll a plaintiff's statute of limitations on a given claim, but only to the extent that the fraud concealed the existence of plaintiff's cause of action and only for as long as the fraud or deception actually prevented the plaintiff from knowing or having reason to know that he has been injured. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992). Here, the acts of deception he claims are defendants' loss of record of his employment.

Conrail told him outright on December 19, 1986 by letter that it did not have sufficient record of his employment to reinstate him. Clearly this "fraud" in no way prevented him from knowing that he had been injured. Rather, it informed him of his injury, since Conrail informed him in January of 1987 that *despite* the supportive documentation he had provided them, they still maintained that sufficient documentation did not exist to permit his reinstatement.

As to any "fraud" committed by Metro–North, Metro–North told him outright by letter in mid 1987 that they, too, had no record of his prior service with Conrail, and that without same or without a representation of same from Conrail, they were powerless to assist him in his efforts to "flow through" under the Implementation Agreement. It is clear that this "fraud" also did not prevent him from knowing that he had been injured. It too actually served to inform him of his injury, since in the letter Metro–North notified him that the absence of such records prevented them from acknowledging his past employment and his right to "flow through." Since the acts plaintiff claims constituted the fraud therefore clearly *do not* serve to toll the statute of limitations, plaintiff's § 1983 claims against Conrail and Metro–North should also be dismissed under 12(b)(6) for failure to state a claim upon

which relief can be granted because the claims are time-barred.

### C. Plaintiff's Request for Leave to Amend His Complaint

▌ Next, we note that plaintiff has asked for leave to amend his complaint. He makes this request not by motion, nor by letter, but instead through his memorandum of law. We additionally note that he failed to supply us with a copy of his proposed amended complaint in support of his request, as required by Fed.R.Civ.P. 15(a). Leave to amend is a matter of the court's discretion. *Posadas de Mexico, S.A. de C.V. v. Dukes,* 757 F.Supp. 297, 300 (S.D.N.Y.1991). Nonetheless where, as here, a complaint is dismissed under Rule 12(b)(6) and plaintiff has requested leave to amend his complaint, that request "should ordinarily be granted" unless the presiding court gives reasons why such leave should be denied. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). Beyond the inartful form of plaintiff's request, we believe there are substantial reasons for denying plaintiff's request for leave to amend his complaint. We therefore deny his request. The reasons for our denial are set forth below.

### 1. Request To Add a Claim under the Americans with Disabilities Act

▌ Plaintiff seeks to amend his complaint to add a claim under the Americans with Disabilities Act ["the ADA" or "the Act"]. The alleged wrong plaintiff asserts is defendants' denial of his right to "flow through" to Metro–North as an assistant conductor. He argues that their denial was based on their prejudice against him as a former drug addict, in violation of his right to non-discriminatory treatment under the ADA. Unfortunately for plaintiff, the ADA did not take effect until July 26, 1992 and does not apply retroactively. *See* 42 U.S.C. § 12111(5)(A) (referencing that there is an "effective date" for the ADA) and § 108 of Publ.L. 101–336 (giving the effective date for

---

Conrail and that without same or without a representation of same from Conrail, they were powerless to allow him to "flow through" under the Implementation Agreement. However, even

under this fact scenario, plaintiff's cause of action still fails to meet the applicable statute of limitations by a *wide* margin.

the ADA: "This title [subchapter] shall become effective 24 months after the date of enactment [July 26, 1990]."); *See also Binder v. Emerson Electric Co.,* 1992 WL 442111 at * 6 (E.D.Mo.1992) (stating that the ADA does not apply retroactively). Hence, even were we to consider the operative date that of plaintiff's most recent request-to-"flow through" date, April 1992, plaintiff still would have no cause of action under the ADA. We therefore deny plaintiff's request to amend his complaint to bring a claim under the ADA.

### 2. Request To Add a Claim under the New York Human Rights Law

■ Plaintiff also seeks to add a claim under the New York Human Rights Law, New York Executive Law § 296 (McKinney's 1993). Plaintiff's claim under the Human Rights Law is virtually identical to his claim under the ADA. Here again, the alleged wrong plaintiff asserts is defendants' denial of his right to "flow through" to Metro–North as an assistant conductor, and he claims that this denial was based on prejudice against him as a former drug addict, in violation of his right to non-discriminatory treatment under the New York Human Rights Law. Unfortunately for plaintiff, this claim is time-barred as well. The statute of limitations for such a claim is three years. *Lehtinen v. Bill Communications, Inc.,* 1989 WL 129533 at * 1 (S.D.N.Y.1989). Hence, since plaintiff's cause of action accrued in 1987, it is time-barred. We therefore also deny plaintiff's request to amend his complaint to bring a claim under the New York Human Rights Law.

### 3. Request To Add a Claim under § 213 Paragraph 8 of the CPLR

■ Plaintiff's third and final requested amendment to his complaint is sought under § 213 paragraph 8 of the New York Civil Practice Law and Rules ["the CPLR"] (McKinney's 1990). This section provides a cause of action for claims of fraud. Plaintiff's claim under this section is at least arguably not time-barred, since it has a six year statute of limitations. However, since all of plaintiff's existing and proposed federal claims are no longer before us, we refuse to entertain this pendent state claim, in accordance with 28 U.S.C. § 1367(c)(3). *See also Fleischman v. Grinker,* 769 F.Supp. 147, 152 (S.D.N.Y.1991) ("Dismissal of pendent state law claims is appropriate where the federal claims to which they have been appended have been dismissed by the Court.").

### D. Defendant Metro–North's Motion for Rule 11 Sanctions

Finally, defendant Metro–North has requested we sanction plaintiff's counsel, David M. Rosoff, Esq., under Fed.R.Civ.P. 11 for his actions in these proceedings. Under Rule 11 of the Federal Rules of Civil Procedure, all attorneys filing pleadings in federal court have a duty to bring only such claims as are "warranted by existing law or a good faith argument for [its] extension, modification, or reversal." In support of this duty, Rule 11 additionally requires all attorneys to sign the pleadings they submit, in order to formally certify that to the best of their "knowledge, information, and belief *formed after reasonable inquiry* [the claims they bring are] well-grounded in fact and [law]. . . ." Under the terms of Rule 11, a signatory-attorney's failure to comply with the requirements of this rule can result in "an appropriate sanction" including, *inter alia,* directing the attorney to pay opposing counsel's costs incurred in defending the action. Imposition of sanctions and the severity of the sanctions are matters in which the court has great discretion.

■ Metro–North's basic argument in support of their request is that plaintiff's pleadings, on their face, demonstrate Mr. Rosoff's consistent, undeniable failure to investigate existing law before bringing claims before us, and that as a result of his lack of inquiry, Mr. Rosoff has brought claims that are not well-grounded in law, wasting our time, and that of the defendants in this action. Although sanctions may be a harsh remedy, we feel that at least some small sanction must be imposed in this case to deter Mr. Rosoff from prosecuting an action in such an irresponsible manner in the future.

To begin with, even the most unknowledgeable attorney should have been put on notice that the suit *might* have been time-barred when the action upon which the claims are based occurred more than 6 year prior to filing, since statutes of limitations exceeding 3 years in non-criminal cases are rare. The briefest search into the applicable statutes of limitations would then have notified Mr. Rosoff that plaintiff's actions were in fact time-barred.

Another telling sign of Mr. Rosoff's lack of professionalism in prosecuting this case is evidenced by the fact that he *did* in fact bring a cause of action under the Railway Labor Act. *See* Complaint at paragraphs 1 and 40–43, the latter entitled "As and for a cause of action under the Railway Labor Act." Again, even a rudimentary search into the applicable law would have informed Mr. Rosoff immediately that employment grievances such as plaintiff's brought under the RLA are automatically limited to original hearing before an adjustment board, pursuant to §§ 3 and 3 Second of the RLA, 45 U.S.C. §§ 153 and 153 Second. Plaintiff even conceded at oral argument that it was specifically because a claim under the RLA would be pre-empted that any reference to such a claim in his complaint was a mistake or accident, and that such references should be ignored.

A further example of Mr. Rosoff's failure to assess the legal issues before running to court with a claim is presented by his requested claim under the ADA. First and foremost, the fact that he has requested leave of this court to bring such a claim demonstrates a lack of inquiry on his part, because the ADA was not in effect until *after* plaintiff's alleged injuries had occurred. Hence, since the ADA does not apply retroactively, he had no possible cause of action under the ADA. Moreover, assuming for the sake of argument that the ADA had been in effect all along, we must doubt whether or not Mr. Rosoff even read all of the Americans with Disability Act before requesting leave to bring a claim under its provisions before this court. We harbor such doubt because at least with respect to his claim against Conrail, the ADA on its face notifies a party to follow the procedures for bringing a claim under the Equal Employment Opportunity Act,[12] and that Act, on its face, informs a party that the complaint must be initially filed with the EEOC, *not* with the federal court.[13]

The above are simply examples of Mr. Rosoff's failure to investigate claims before asserting them in this court in the present action. Ultimately, plaintiff has relied on defendants' work to learn of the glaring and obvious deficiencies in his own claims as a matter of course throughout this action. He has then sought to reshape plaintiff's complaint through legal argument for each and every controlling law defendants have cited which would have resulted in our dismissal of his complaint out-of-hand. Such piggy-back prosecution of claims is frowned upon by this court.

Given all of the above, we find sanctions against plaintiff's counsel to be appropriate, in the hope that it will encourage Mr. Rosoff to research his claims before bringing them in the future. Through his lack of diligence, Mr. Rosoff has wasted a great deal of our time and that of the defendants. We therefore grant defendant Metro–North's request for sanctions. As to the amount of the sanctions, in the interests of leniency we order plaintiff's counsel to pay $500.00 towards *each* defendant's costs in defending this action.

### III. CONCLUSION

Thus, in summary, plaintiff's NRSA and Implementation Agreement claims are dismissed under 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's Fourteenth Amendment Due Process claim is dismissed as duplicitous and therefore frivolous. Plaintiff's § 1983 claims are dismissed under 12(b)(6) for failing to state a claim upon which relief can be granted. And the Rule 11 motion for sanctions against plaintiff is granted in the amount of $1,000.00, to be paid by plaintiff's attorney to defendants'

---

**12.** 42 U.S.C. § 12117.

**13.** 42 U.S.C. § 2000e.

counsel ($500.00 to each) concerning their costs in defending this action. Finally, plaintiff's request for leave to amend his complaint is denied.

SO ORDERED.